MANKA, Respondent, v. KARNS, Commissioner of Motor Vehicle Department, Appellant.*

*December 1, 1966—January 3, 1967.*

---

* Motion for rehearing denied, without costs, on February 28, 1967.

For the appellant the cause was argued by *E. Gordon Young* and *LeRoy L. Dalton,* assistant attorneys general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Herbert L. Usow*, attorney, and *Robert L. Sanderson* of counsel, both of Milwaukee, and oral argument by *Mr. Usow*.

WILKIE, J.   A single, though complex, issue is presented by this appeal, which may be stated as follows: May the commissioner of the Motor Vehicle Department assess 12 demerit points against a person's driving record and order a revocation of that person's operating privileges when that person is convicted of a speeding offense carrying a penalty of six demerit points, which offense occurred during a period determined by the commissioner as one during which that person's operating privileges were already revoked but where a court had not yet finally determined that the defendant was guilty of driving while such operating privileges were revoked?

The facts may be boiled down into two stages:

*First,* Manka, who held no Wisconsin driver's license but an overseas United States army license, was twice arrested for speeding and on conviction he was notified by the Motor Vehicle Department that he was charged with a total of nine demerit points. After he was issued a temporary driver's instruction permit his driving privileges were revoked by the Motor Vehicle Department (Manka having been found guilty of a third speeding charge), but the policeman agent was ordered to and did pick up only his temporary instruction permit, Manka having been issued a permanent driver's license in the meantime. Manka was arrested for the fourth time for speeding and charged with both speeding and driving after revocation of his license. After some delay Manka was found guilty on both counts in the county court of Ozaukee county. Thereupon, the Motor Vehicle Department ordered another revocation of his license based on his driving while his license had been revoked.

The *second* stage commenced with the initiation of judicial review proceedings before the circuit court for

Milwaukee county; Manka disputed that his driver's license was revoked at the time of the final speeding incident. The county court of Ozaukee county vacated its order of conviction for driving after revocation of license and ordered a new trial on that charge. In the meantime, the commissioner modified his revocation order basing the revocation not on the driving while revoked, but on his power to revoke the license on the basis of a conviction for the speeding charge occurring during a period in which he considered Manka's driving privileges had been revoked.

The case of *Goodman v. Karns* [2] is closely parallel to the case at bar. In *Goodman,* on November 17, 1964, appellant had his operating privileges revoked for two months because he had accumulated 12 points within a one-year period. Goodman was notified that he would not be eligible for reinstatement of his driving privileges until January 17, 1965. Reinstatement was not automatic, however, in that Goodman had to prove financial responsibility and pass the driver's examination first.

On January 30, 1965, Goodman was charged with driving without a driver's license, although he originally was charged with operating a motor vehicle after revocation. Goodman's license was not reinstated until February 12th. On February 24th Goodman was convicted of the charge of driving without a driver's license. Thereupon, the Motor Vehicle Department first assessed Goodman four points for this violation, but subsequently concluded that 12 points should have been assessed, essentially because the conviction was *prima facie* evidence of operation of a motor vehicle after revocation.

Goodman's license was revoked for a one-year period and Goodman sought review. The Motor Vehicle Department stated that the authority for its actions was based on sec. 343.32 (2), Stats., and MVD 11.03 (14) (c), 5

---

[2] (1965), 29 Wis. (2d) 140, 138 N. W. (2d) 276.

Wis. Adm. Code. The trial court dismissed, but this court reversed with directions to vacate the commissioner's order of revocation. The basis of this court's opinion was that 12 points were assessed for an offense which the commissioner's order of revocation refers to as "no driver's license" which is a four-point violation pursuant to the regulations of the Motor Vehicle Department.[3]

In *Goodman* the commissioner contended that the records of the Motor Vehicle Department conclusively established that Mr. Goodman was driving after his driving privileges had been revoked and, therefore, it was within the commissioner's discretion to treat the offense as a 12-point violation. This court rejected this contention, stating:

"Counsel for the commissioner acknowledged at the oral argument before this court that the commissioner did not revoke Mr. Goodman's license under the broad discretionary power which he is given by sec. 343.32 (2), Stats., to revoke the license of one who is 'an habitually reckless or negligent operator.' Instead, the commissioner has relied upon the point schedule contained in regulation MVD 11.03. While this regulation grows out of the commissioner's discretionary power under sec. 343.32 (2), it purports to affix point values for various types of convictions. In sec. (14) (c) of this regulation, 12 points are assessed for a conviction for operating a motor vehicle while one's operating privilege is revoked.

"While the foregoing regulation authorizes the commissioner to assess points based upon a *conviction*, it surely does not authorize the assessment of points in contradiction of a conviction. In the instant case, the commissioner assessed points on the basis of an offense which was more serious than that for which the driver was actually convicted; this represents administrative action in direct contravention of a judicial judgment. The administrative action is therefore invalid and must be set aside." [4]

---

[3] Sec. MVD 11.03 (14) (b), 5 Wis. Adm. Code.

[4] *Goodman v. Karns, supra,* footnote 2, at page 143.

The court concluded:

"In our opinion, the commissioner was not free to disregard the court's judgment. If the judgment were deemed incorrect, there should have been a direct challenge to it either by a motion for rehearing or by appeal. The commissioner was not entitled to ignore it or to decide administratively that it was incorrect." [5]

Once a determination is made by the courts as to the type or nature of the motor vehicle violation, the Motor Vehicle Department can apply standards to the violations according to their seriousness and based on the court's determination. The Motor Vehicle Department may not take judicial action by assigning a point value to a violation different than that called for by the point schedule, even if such a point assessment appears to be warranted by its records.

The similarities of *Goodman* and the case at bar are apparent. In both cases defendants were convicted of an offense which did not require a mandatory or discretionary revocation. In both cases the commissioner revoked the license of defendants by relying on a violation of the state traffic laws of which defendant was not convicted at trial. In effect, since the driving-while-revoked charge is still suspended in the courts, in the case at bar the commissioner has raised the severity of a speeding conviction to a 12-point violation requiring a revocation. The basis of this action was that the commissioner's records showed that this speeding conviction occurred during a period when the defendant's license was revoked, thereby establishing, *prima facie,* that defendant was operating while his license was revoked. The *Goodman Case* specifically holds that the commissioner may not do this administratively, but must directly challenge the original conviction by a motion for rehearing or by appeal.

In *Goodman* the commissioner's authority was based on rule MVD 11.03 (14) (c), which states:

[5] Id. at page 144.

"Operating while operating privilege is suspended or revoked . . . .                                    12 [points]"

This section was taken out of the MVD regulations on June 30, 1966. In the case at bar, the commissioner relied upon rule MVD 11.03 (3), which states:

"Conviction for any traffic violation during suspension or revocation period . . . .           12 [points]"

It should be noted, however, that sec. 11.03 (3) could possibly have been used in *Goodman.* Moreover, sec. 11.03 (3) operates on the same principle rejected in the *Goodman Case, i.e.,* raising the point assessment of a traffic violation because the commissioner's records show that the violation occurred during a period of revocation.

The attorney general argues that the original revocation order voids all driver's licenses so that there cannot possibly be any issue as to the validity of the defendant's driver's license on September 19, 1966. The trial court correctly stated that this issue should be dealt with as part of the new trial on the charge of driving after revocation. Any question as to whether defendant Manka was driving after revocation will be resolved in the new trial.

The attorney general also argues that sec. 343.32 (2), Stats., authorizes action under rule MVD 11.03 (3) by implication. The pertinent part of the statute states:

". . . When a person who has had his regular license revoked continues to operate as a private operator and who also has a chauffeur's license and is convicted of any traffic violation, 12 demerit points shall be assigned against his chauffeur's license."

The attorney general argues that it would be incongruous to not be able to assess 12 demerit points against an ordinary driver's license also.

The statute's express wording does not require or authorize assessing an automatic 12 demerit points against a private operator's license. Sec. 343.31 (1) (f), Stats.,

requires mandatory revocation whenever a driver is convicted of "operating a motor vehicle while operating privileges are suspended or revoked." This statute requires a conviction, however, before action to revoke can be taken. The discretionary power contended for by the attorney general under sec. 343.32 (2), and rule MVD 11.03 (3) would not require such a conviction, and would thus directly contravene the policy of sec. 343.31 (1) (f). Such a power would thus enable the Motor Vehicle Department to act judicially in a manner contrary to the policy approved by this court in *Goodman v. Karns*.[6]

*By the Court.*—Order affirmed.

CURRIE, C. J. (*dissenting*). I respectfully dissent and would hold that, whenever the Motor Vehicle Department has validly suspended or revoked the driver's license of a motorist and court conviction of such motorist is reported to the department establishing that he was driving during the suspension or revocation period, the department *without any court action* has the power to assess the 12 points authorized by MVD 11.03 (3).

This record clearly establishes that a valid three months' revocation order was entered by the department on August 19, 1964, and that he was later prosecuted and convicted of a traffic offense which occurred September 19, 1964. It is wholly immaterial under the statute whether any license held by Manka was picked up or not by a representative of the department. However, such failure to pick up the license might well invoke sympathy in a later prosecution for driving while the license was revoked and result in an acquittal of the charge. Under the instant decision of the court if such acquittal was by a jury the department would be barred from assessing the required 12 points for revoking the license.

---

[6] *Supra,* footnote 2.

If it is necessary to modify our holding in *Goodman v. Karns* to reach this result I would do so. Where our court is presented with two possible statutory interpretations, I deem we should assume the legislative intent favored that interpretation which would be in the interest of greater highway safety.

I am authorized to state that Mr. Justice HANLEY joins in this dissenting opinion.